**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

-----------------------------------------------------------------X

AMILEE CATTOUSE, a/k/a SHAILA SCOTT,      :

                                  :     Civil Action No.:

               Plaintiff,          :

        v.                       :

                                    :     **COMPLAINT**

MEDIACO HOLDING INC. and             :

EMMIS COMMUNICATIONS CORPORATION,    :

                                    :     **Jury Trial Demanded**

               Defendants.       :

                                    :

-----------------------------------------------------------------X

Plaintiff Amilee Cattouse, a/k/a Shaila Scott ("Cattouse"), as and for her Complaint against Defendant MediaCo Holding Inc. ("MediaCo") and Defendant Emmis Communications Corporation (individually "Emmis" and collectively with MediaCo "Defendants"), hereby alleges as follows:

**PRELIMINARY STATEMENT**

1.      Cattouse has been referred to as "Radio Royalty."  And for good reason.  For the last thirty years she has been a leading on-air radio personality in New York (the most competitive market in the United States), where she has hosted one of Defendants' top-rated, non-syndicated programs.  Her program historically has generated higher ratings, and likely higher advertising revenue, than other programs hosted by other MediaCo personalities.  She has also won numerous awards for her extraordinary work, including, being named "One of the Outstanding Women in Radio," "One of the Top Five Radio Diva's in New York Radio," and "One of the Top 30 Radio Personalities in the Country."

2.      Nevertheless, Defendants have treated Cattouse less well than her male peers. Upon information and belief, Defendants paid Cattouse thousands or perhaps even hundreds of

thousands of dollars per year less than two comparable male on-air personalities, despite her superior ratings and ability to generate revenue.

3.      Defendants also discriminated against Cattouse because of her age.  Cattouse, who at age 59, was one of the oldest MediaCo on-air personality, was subjected to comments about "old Negro spirituals" being played for the Martin Luther King, Jr. holiday and cautioned not to create a concert lineup that was "too geriatric."  In May 2022, MediaCo fired Cattouse claiming that it was going in a "new direction."  It replaced her with an on-air personality who was at least 25 years younger that Cattouse and working in Alabama.

4.      Defendants' conduct violated the equal pay, anti-discrimination and anti-retaliation provisions of the Equal Pay Act, 29 U.S.C. § 206 *et seq*. ("EPA"); the New York State Human Rights Law, N.Y. Executive Law § 290 *et seq.* ("NYSHRL"); the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.* ("NYCHRL"); the New York State Pay Equity Law, N.Y. Lab. Law § 194 *et seq*. ("NYSPEL").[1]

## JURISDICTION AND VENUE

5.      The Court has jurisdiction pursuant to 28 U.S.C. § 1331 as this action involves federal questions under the EPA.

6.      The Court has supplemental jurisdiction over Plaintiff's Local Law claims pursuant 28 U.S.C. § 1367(a).

7.      Venue is proper pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to this action, including the unlawful employment practices alleged herein, occurred in this district.

---

[1]      The NYSHRL, NYSPEL and NYCHRL are referred to collectively as the "Local Laws."

## ADMINISTRATIVE PROCEDURES

8.      Plaintiff will file a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging sex and age discrimination, and retaliation, in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, *et seq*. and Age Discrimination in Employment Act of 1967, 29 U.S.C. §§ 621 *et seq*. She will seek leave to file an Amended Complaint once she has exhausted her administrative remedies.

9.      Pursuant to NYCHRL § 8-502, Plaintiff will serve a copy of this Complaint upon the New York City Commission on Human Rights and the New York City Law Department, Office of the Corporation Counsel, within ten days of its filing, thereby satisfying the notice requirements of that section.

10.     Any and all other prerequisites to the filing of this suit have been met.

## PARTIES

11.     Plaintiff was an on-air personality for Defendants and was, at all relevant times, an "employee" under the EPA and Local Laws.

12.     MediaCo is a radio broadcasting media company incorporated in Indiana. MediaCo has two radio stations, WBLS and WQHT-FM ("Hot97"), that serve the New York City metropolitan area, both of which operate from 395 Hudson Street, 7th Flloor, New York, New York 10014 and constitute one establishment.  MediaCo is engaged in an industry affecting commerce within the meaning of 29 U.S.C. §203(b), and was, at all relevant times, an "employer" under the EPA and Local Laws.

13.     Emmis is a radio broadcasting media company incorporated in Indiana.  Emmis operated WBLS and other radio stations that served the New York City metropolitan area.

Emmis was engaged in an industry affecting commerce within the meaning of 29 U.S.C. §203(b), and was, at all relevant times, an "employer" under the EPA and Local Laws.

## FACTUAL ALLEGATIONS

### I.    BACKGROUND

14.     Cattouse is a New York native from Harlem.

15.     In 1985, Cattouse earned her Bachelor of Arts in Broadcasting from SUNY Buffalo State and promptly started her career as an on-air personality for WBLK in Buffalo.

16.     In 1988, Cattouse joined WBLS and in 1994 joined the iconic KISS FM (then owned by Emmis), in New York City as the first female on-air personality of *Kissing After Dark*.  Cattouse subsequently joined the highly acclaimed KISS FM morning show *The Wake Up Club*.

17.     In 2012, following the closure of KISS FM, Cattouse rejoined WBLS (also an Emmis station) as the mid-day on-air personality.

18.     In 2020, Emmis sold WBLS and its sister station Hot97 to MediaCo.

19.     Throughout her tenure with Defendants, Cattouse's program was one of the top-rated shows in New York City in her time slot.

20.     Cattouse obtained comparable or better average ratings than her male counterparts at Hot97.

21.     In early 2022, WBLS had a wider audience and higher rankings than Hot97, the other MediaCo station that operated from the same location as WBLS.

22.     During her storied career, Cattouse earned numerous awards, including, the SUNY Distinguished Alumnus Award, the McDonalds Hal Jackson Trailblazer Award, the Café

Mocha Broadcast Innovator Award, the Heroine of Excellence Award and the American Cancer Society Dedication Award.

23.     She has also been listed as "One of the Outstanding Women in Radio," "One of the Top Five Radio Diva's in New York Radio," and "One of the "Top 30 Radio Personalities in the Country."

## II.     UNEQUAL PAY

24.     Nevertheless, Defendants paid Cattouse less than two of her male peers.

25.     Cattouse and her male peers performed the same tasks.  Each was required to perform "On-Air" broadcasting services for their stations, including the production, preparation and writing of programs or other on-air material.

26.      More specifically, each of them created and delivered content for a daily four- to five-hour radio shift; conducted guest interviews; performed live reads on air; ensured the correct commercials were played; and maintained ratings.

27.     Each of them also provided internet and digital content for Defendants' stations.

28.     They all worked from the same location, Defendants' New York City offices, and at MediaCo were supervised by the same manager, Pio Ferro, Director of Programming.

29.     Upon information and belief, Defendants paid Cattouse substantially less than either of her two male peers.

## III.    AGE DISCRIMINATION

30.     In recent years, Cattouse was the oldest of the MediaCo weekday, regular non-syndicated on-air personalities.  Upon information and belief, the other MediaCo employed weekday personalities ranged in age from 33 to 53.

31.     MediaCo's managers ridiculed Cattouse because of her age.  For example, in November 2021, Cattouse's supervisor, Cynthia Smith, told Cattouse, who was assembling a music program, not to create a concert lineup that was "too geriatric."

32.     In January 2022, the Digital Director of WBLS and Hot97 commented about "old Negro spirituals" being played for the Martin Luther King, Jr. holiday.

33.     In March 2022, MediaCo asked Cattouse to create a podcast.  After Cattouse laid the groundwork and prepared to record the podcast, she was advised just days before the recording that the Company did not want her to record the podcast, only to have a younger employee step in and record the podcast.

34.     On multiple occasions MediaCo managers and directors made comments about the Company needing a "fresh" approach – a transparent reference to jettison older employees in favor of younger hires.

35.     Indeed, MediaCo developed a pattern of hiring new employees who were in their 20s and 30s rather than more experienced individuals.

36.     Despite her outstanding rankings, on or about May 9, 2022, MediaCo fired Cattouse, claiming that it was going in a "new direction."  MediaCo replaced Cattouse with an on-air personality in her thirties.

37.     Recognizing its unlawful behavior, MediaCo refused to pay Cattouse her severance unless she promised to waive all of her legal claims against the company, including claims for sex and age discrimination.

38.     When Cattouse refused to do so and made clear that she intended to assert her rights, MediaCo withheld Cattouse's guaranteed severance payment.

## FIRST CAUSE OF ACTION
### (Discrimination in Violation of the EPA)
#### *Against All Defendants*

39.     Plaintiff repeats, reiterates and re-alleges each and every allegation above in the preceding paragraphs, as though set forth fully herein.

40.     By the acts and practices described above, Defendants violated the EPA by paying male employees higher wages than Plaintiff for substantially equal work in a job which required equal skill, effort and responsibility and which was performed under similar working conditions.

41.     Defendants' conduct was willful, and they knew that their actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for Plaintiff's statutorily protected rights.

42.     Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

## SECOND CAUSE OF ACTION
### (Retaliation in Violation of the EPA)
#### *Against Defendant MediaCo*

43.     Plaintiff repeats, reiterates and re-alleges each and every allegation above in the preceding paragraphs, as though set forth fully herein.

44.     By the acts described above, Defendant retaliated against Plaintiff for engaging in protected activity under the EPA.

45.     Defendant's conduct was willful, and it knew that its actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for Plaintiff's statutorily protected rights.

46.     Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

**THIRD CAUSE OF ACTION**
**(Discrimination in Violation of the NYSHRL)**
*Against All Defendants*

47.     Plaintiff repeats, reiterates and re-alleges each and every allegation above in the preceding paragraphs, as though set forth fully herein.

48.     By the acts described above, Defendants discriminated against Plaintiff in the terms and conditions of her employment on the basis of her sex and age in violation of the NYSHRL.

49.     Defendants' conduct was willful, and they knew that their actions constituted unlawful discrimination and/or showed reckless disregard for Plaintiff's statutorily protected rights.

50.     Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

**FOURTH CAUSE OF ACTION**
**(Retaliation in Violation of the NYSHRL)**
*Against Defendant MediaCo*

51.     Plaintiff repeats, reiterates and re-alleges each and every allegation above in the preceding paragraphs, as though set forth fully herein.

52.     By the acts described above, Defendant retaliated against Plaintiff for engaging in protected activity under the NYSHRL.

53.     Defendant's conduct was willful, and it knew that its actions constituted unlawful retaliation and/or showed reckless disregard for Plaintiff's statutorily protected rights.

54.     Plaintiff has suffered and will continue to suffer irreparable injury, emotional

distress and other compensable damage unless and until this Court grants relief.

### FIFTH CAUSE OF ACTION
**(Discrimination in Violation of the NYCHRL)**
*Against All Defendants*

55.     Plaintiff repeats, reiterates and re-alleges each and every allegation above in the

preceding paragraphs, as though set forth fully herein.

56.     By the acts described above, Defendants discriminated against Plaintiff in the

terms and conditions of her employment on the basis of her sex and age in violation of the

NYCHRL.

57.     Defendants' conduct showed willful and/or wanton negligence, recklessness and

conscious disregard for Plaintiff's statutorily protected rights.

58.     Plaintiff has suffered and will continue to suffer irreparable injury, emotional

distress and other compensable damage unless and until this Court grants relief.

### SIXTH CAUSE OF ACTION
**(Retaliation in Violation of the NYCHRL)**
*Against Defendant MediaCo*

59.     Plaintiff repeats, reiterates and re-alleges each and every allegation above in the

preceding paragraphs, as though set forth fully herein.

60.     By the acts described above, Defendant retaliated against Plaintiff for engaging in

protected activity under the NYCHRL.

61.     Defendant's conduct showed willful and/or wanton negligence, recklessness and

conscious disregard for Plaintiff's statutorily protected rights.

62.     Plaintiff has suffered and will continue to suffer irreparable injury, emotional

distress and other compensable damage unless and until this Court grants relief.

## SEVENTH CAUSE OF ACTION
### (Violations of NYSPEL)
### *Against All Defendants*

63.     Plaintiff repeats, reiterates and re-alleges each and every allegation above in the preceding paragraphs, as though set forth fully herein.

64.     By the acts and practices described above, Defendants violated the NYSPEL by paying male employees higher wages than Plaintiff for substantially similar work based on a composite of skill, effort and responsibility, and which was performed under similar working conditions.

65.     Defendants' conduct was willful, and they knew that their actions constituted unlawful violation of equal pay laws and/or showed reckless disregard for Plaintiff's statutorily protected rights.

66.     Plaintiff has suffered and will continue to suffer damages as a result of Defendant's willful and unlawful conduct unless and until this Court grants relief.

## EIGHTH CAUSE OF ACTION
### (Retaliation in Violation of NYSPEL)
### *Against Defendant MediaCo*

67.     Plaintiff repeats, reiterates and re-alleges each and every allegation above in the preceding paragraphs, as though set forth fully herein.

68.     By the acts described above, Defendant retaliated against Plaintiff for engaging in protected activity under the NYSPEL.

69.     Defendant's conduct was willful, and it knew that its actions constituted unlawful retaliation and/or showed reckless disregard for Plaintiff's statutorily protected rights.

70.     Plaintiff has suffered and will continue to suffer irreparable injury, emotional distress and other compensable damage unless and until this Court grants relief.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter a Judgment:

A.      declaring the acts and practices complained of herein to be violations of the EPA, the NYSPEL, the NYSHRL and the NYCHRL;

B.      enjoining and permanently restraining these violations of the EPA, the NYSPEL, the NYSHRL and the NYCHRL;

C.      directing Defendants to place Plaintiff in the position she would have occupied but for Defendants' discriminatory and retaliatory treatment of her, and making her whole for all earning and other benefits she would have received but for Defendant's discriminatory treatment, including but not limited to wages, including back pay and front pay, bonuses and other lost benefits;

D.      directing Defendants to take such affirmative steps as are necessary to ensure that the effects of these unlawful practices are eliminated and do not continue to affect Plaintiff's employment opportunities;

E.      directing Defendants to pay Plaintiff liquidated damages for its violations of the EPA and the NYSPEL;

F.      directing Defendants to pay Plaintiff compensatory damages including damages for emotion distress, humiliation, pain and suffering and injury to professional standing and reputation;

G.      directing Defendants to pay Plaintiff additional amounts as punitive damages;

H.      awarding Plaintiff such interest as is allowed by law, and damages for any adverse tax consequences stemming from an award;

      I.      awarding Plaintiff the costs of this action, together with reasonable attorneys' fees; and,

      J.      awarding such other and further relief as this Court deems necessary and proper.

<strong><u>JURY DEMAND</u></strong>

Pursuant to Federal Rule of Civil Procedure Rule 38(b), Plaintiff demands a trial by jury in this action.

Dated: July 8, 2022
New York, New York

Respectfully submitted,

**WIGDOR LLP**

By: _____
      Valdi Licul
      Sagar K. Shah

85 Fifth Avenue
New York, NY 10003
Telephone:  (212) 257-6800
Facsimile:   (212) 257-6845
vlicul@wigdorlaw.com
sshah@wigdorlaw.com

**Gilda L. Kramer & Associates, LLC**

Gilda L. Kramer, Esquire

127 Penarth Road
Bala Cynwyd, PA 19004
Telephone:  (215) 732-4055
Facsimile:   (215) 732-2736
gkramer@gildakramer.com

(*Pro Hac Vice* Motion to be submitted)